# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| BARBARA KENNEDY | CIV. ACTION NO. 3:21-03854 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LAMB WESTON | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 21] filed by Defendant Lamb Weston.   For reasons explained below, it is recommended that the motion be GRANTED.

## Background

On November 2, 2021, Plaintiff Barbara Kennedy ("Kennedy") filed the instant pro se complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq,* against her former employer Lamb Weston.  (Compl.).   Kennedy alleged that she worked for Lamb Weston from August 2, 2010, until September 22, 2020, when she was discharged after being "one ton off on [her] product assessment." *Id*.  Kennedy added that, during her tenure, she was subjected to harassment by Charlotte Peyton, Fleet Coordinator Specialist, and Jason Norris, Senior Ag Specialist, who would yell and scream at her and assign her excessive work. *Id*.

Kennedy's two-page form complaint is short on details.  However, she attached to the complaint various Equal Employment Opportunity Commission ("EEOC") documents, including a right to sue notice, her EEOC discrimination charge, her EEOC pre-charge inquiry form, Lamb Weston's response to the EEOC charge, Kennedy's reply to Lamb Weston's response, two

disciplinary action forms issued to Kennedy by Lamb Weston, and a documented counseling form issued to Kennedy by Lamb Weston.  (Compl. Attach.).  From the EEOC documents and exhibits attached to the Complaint, the court is able to distill that Kennedy, an African-American, contends that she was subjected to race discrimination, harassment, hostile work environment, and retaliation.  However, in her Complaint and attachments, Kennedy did not assert any claims for damages or other form of relief.

Despite filing the instant suit within 90 days of the EEOC's issuance of a right-to-sue notice, Kennedy did not perfect service on Lamb Weston within 90 days after she filed suit.  Accordingly, after issuing a warning to Kennedy that went unheeded, the Clerk of Court dismissed the suit for failure to prosecute on April 21, 2022.  *See* Order [doc. # 8].  In response to the dismissal, Kennedy filed a motion to reopen/reinstate the suit, which the court granted.  [doc. #s 9-10].

After further prompting, Kennedy eventually served Lamb Weston with a copy of the summons on October 25, 2022.  *See* Proof of Service [doc. 20].  According to Lamb Weston, however, Kennedy failed to serve a copy of the Complaint, as required by Rule 4(c)(1) of the Federal Rules of Civil Procedure.  *See* M/Dismiss, Memo., pg. 6.

Rather than quibble with the sufficiency of process or service, Lamb Weston instead opted to file the instant motion to dismiss on December 15, 2022, for failure to state a claim upon which relief can be granted.  In its motion, Lamb Weston advanced two independent bases for dismissal:  1) Kennedy is judicially estopped from asserting her Title VII claims because she never disclosed the claims in her bankruptcy proceeding; and 2) the facts alleged by Kennedy do not support a plausible Title VII claim.

2

On January 9, 2023, Kennedy filed a letter-response to the motion to dismiss wherein she briefly addressed Lamb Weston's judicial estoppel argument. (Pl. Response [doc. # 23]). She also asked the court for additional time to seek legal advice. *Id*. Accordingly, the court granted Kennedy an extension of time until February 13, 2023, within which to seek legal advice and to file a supplemental memorandum. (Jan. 11, 2023 Order [doc. # 24]). On January 17, 2023, Lamb Weston filed a reply brief in support of its motion to dismiss. (Def. Reply [doc. # 25]).

Kennedy has neither filed a supplemental brief, sought further extensions of time, enrolled counsel, nor taken any other action in this matter since her January 2023 filing. Accordingly, the matter is ripe.

## <u>Rule 12(b)(6) Principles</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a

3

plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly.*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

4

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Supreme Court explained that the *McDonnell Douglas* framework[1] "is an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992, 997.[2]  Accordingly, a plaintiff's complaint need only comply with Rule 8, which requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8; *Swierkiewicz*, 423 U.S. at 515, 122 S.Ct. 992.

However, the Fifth Circuit maintains that the prima facie standard *is* relevant at the motion to dismiss stage at least in the sense that a plaintiff is obliged to plead facts as to each of the ultimate *elements* of her claim sufficient to render the case plausible. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).  In other words, it may be helpful to reference the *McDonnell Douglas* framework on which plaintiff must rely if she bases her claim on circumstantial evidence. *Id.*  Nonetheless, *McDonnell Douglas* is not dispositive at the pleading stage because it may not even apply if discovery reveals direct evidence of discrimination. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

More recently, the Supreme Court has clarified that "*McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[2] Furthermore, *Twombly* did not overrule *Swierkiewicz*.  *See Twombly*, 550 U.S. at 569-70, 127 S.Ct. 1955.

elements of a plaintiff's claim." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, ___ U.S. ___, 140 S.Ct. 1009, 1019 (2020).  Moreover, "the essential elements of a claim remain constant through the life of a lawsuit." *Id.*

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).  Because filings in other cases are public records, the court may take judicial notice of them.  *See Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 Fed. App'x. 617, 618 n.1 (5th Cir. 2015) (citations omitted). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[er] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).  Finally, if a plaintiff attaches an EEOC charge to her complaint, then it becomes a part of her complaint for all purposes.  *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (citing FED. R. CIV. P. 10(c)).

<u>**Analysis**</u>

### I.    Judicial Estoppel

Judicial estoppel is

a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.  The purpose of the doctrine is to protect the integrity of the judicial process, by prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self-interest.  Because the doctrine is intended to protect the judicial system, rather

6

than the litigants, detrimental reliance by the opponent of the party against whom
the doctrine is applied is not necessary.

*In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (internal quotation marks and
citations omitted).  "The doctrine is generally applied where intentional self-contradiction is
being used as a means of obtaining unfair advantage in a forum provided for suitors seeking
justice."  *Id.* (quoted source omitted).

Judicial estoppel requires proof of the following, "(1) the position of the party against
which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against
which estoppel is sought convinced a court to accept the prior position; and (3) the party did not
act inadvertently."  *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (citation
omitted).

As stated above, Lamb Weston contends that Kennedy is judicially estopped from
pursuing her Title VII claims against Lamb Weston because she failed to disclose the claims in
her bankruptcy case.  It is manifest that the "Bankruptcy Code and Rules impose upon
bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and
unliquidated claims.  In re Coastal Plains, Inc.*, 179 F.3d at 207–08 (citing 11 U.S.C. § 521(1)).
The "duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required
to disclose all potential causes of action."  *Id.*  (citation omitted); *Kane v. National Union Fire
Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008).  In fact, the debtor need not even know all the facts or
the legal basis for the cause of action.  *In re Coastal Plains, Inc., supra*. (citation omitted).

"In Chapter 13 cases, the estate also includes legal claims and causes of action that are
acquired 'after the commencement of the [bankruptcy] case *but before the case is closed*,

7

dismissed, or converted.'" *Young v. Town of Greenwood*, Civ. Action No. 08-602, 2009 WL 1924192, at *2 (W.D. La. June 26, 2009) (quoting 11 U.S.C. § 1306(a)(1) & § 541(a)(1)) (emphasis added).   "Therefore, bankruptcy debtors have an ongoing duty to amend their schedule of assets in bankruptcy proceedings, including those acquired after a bankruptcy court has confirmed a bankruptcy plan." *Henry v. Kansas City S. Ry. Co.*, Civ. Action No. 10-0469, 2010 WL 3613795, at *4 (W.D. La. Sept. 8, 2010) (citations omitted).

The court has identified the following pertinent dates:

- On June 6, 2017, Kennedy filed her Chapter 13 bankruptcy petition wherein she represented in the attached property schedule that she had no claims against third parties, whether or not she had filed a lawsuit.  (Bankruptcy Petition*, In Re: Barbara Kennedy*, Case No. 17-30873, (Bankr. W.D. La.); M/Dismiss, Exh. 1 [doc. # 21-2]).

- On August 30, 2017, the Bankruptcy Court entered an order confirming Kennedy's Chapter 13 Plan, consisting of 36 monthly payments.  (Order Conf. Plan; M/Dismiss, Exh. 4 [doc. # 21-5]).

- On September 22, 2020, Kennedy is discharged from Lamb Weston.  *See* Compl.

- On September 23, 2020, Kennedy contacted the EEOC to obtain a pre-charge inquiry form.  (EEOC Log; Def. Reply Brief, Exh. 2 [doc. # 25-2]).

- On September 28, 2022, the Chapter 13 Trustee filed his Final Report and Account stating that the case was completed on June 19, 2020, and that over $30,000 in unsecured claims were discharged without payment.  (Final Report & Acct.; M/Dismiss, Exh. 5 [doc. # 21-6]).

- On November 10, 2020, the Bankruptcy Court issued its Final Decree that discharged the trustee and closed the case.  (Final Decree; M/Dismiss, Exh. 6 [doc. # 21-8]).

Judicial estoppel's "inconsistent positions" prong is met when, as here, a debtor omits a claim from her bankruptcy schedules, but then asserts that claim in a separate action.  *Browning*, 179 F.3d at 210.  In her Complaint and attachments, Kennedy alleged that Lamb Weston committed unlawful acts against her in the years leading up to her wrongful discharge.  *See*

8

discussion, *infra*.  Kennedy certainly was aware of those acts by the time Lamb Weston effectively discharged her on September 22, 2020.  Nonetheless, she neglected to amend her property schedule to add these potential claims prior to the November 10, 2020 closure of her bankruptcy case.  Moreover, the bankruptcy court discharged over $30,000 of Kennedy's debt, in reliance upon her payment plan, which, in turn,  was premised on the value of her disclosed assets.

In short, although Kennedy's bankruptcy case is now closed, her cause of action arose while the case was still pending.  Because Kennedy failed to disclose her potential claim against Lamb Weston to the bankruptcy court before filing the instant suit, judicial estoppel's first and second prongs are satisfied.  *Henry, supra*.

To establish that a failure to disclose was inadvertent under the third prong of the judicial estoppel test, a party may demonstrate either that she did not know of the inconsistent position or that she had no motive to conceal it from the court.  *In re Coastal Plains, Inc.,* 179 F.3d at 210. "[T]he controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions."  *Jethroe, supra*.  Moreover, "[a claimant's] lack of awareness of [a] statutory disclosure duty for its [legal claims] is not relevant."  *Id*. (citation omitted).  The court also may find that a debtor had a financial incentive to conceal potential claims from creditors when the bankruptcy court discharged some of her debt or imposed a payment plan that did not contemplate the non-disclosed assets.  *See Jethroe, supra*.

In her response to the motion to dismiss, Kennedy asserted that she had no potential claims at the time of her bankruptcy, nor was she aware that she had to report the problems she was having at work to her bankruptcy attorney.  Kennedy emphasized that she made her final

bankruptcy payment on June 6, 2020, and, therefore, her bankruptcy case had ended by the time of her discharge in September 2020.

While Kennedy may have completed her payment plan by June 2020, her bankruptcy case was not closed until November 10, 2020.  Moreover, she knew by September 22, 2020, at the latest, that she had a potential claim against Lamb Weston, but failed to amend her property schedule to disclose it.  Because Kennedy obtained a discharge of debt based on a payment plan that did not contemplate the non-disclosed assets, she is deemed to have had a motive to conceal the asset.

Finally, this was not Kennedy's first bankruptcy filing.  She and her ex-husband filed a Chapter 12 petition for bankruptcy in 2007, which lasted a number of years.  *See In Re:  Willie C. Kennedy and Barbara Kennedy*, No. 07-30775 (Bankr. W.D. La.).  Consequently, she should have been well-acquainted with her duties and responsibilities under the Bankruptcy Code.  Therefore, the court finds that Kennedy did not act inadvertently when she failed to amend her schedule of assets to disclose her Title VII claims prior to filing suit against Lamb Weston.  *See Henry, supra*; *Young, supra*.

As a result, Kennedy is judicially estopped from asserting her present claims against Lamb Weston.  *Id.*

## II.    Sufficiency of the Title VII Claims

a)  Facts Alleged

Kennedy's Complaint, as augmented by the attached EEOC record, reveals myriad incidents that she contends supports her claims for race-based discrimination.  The court will endeavor to list them, as they occurred:

10

- On September 28, 2017, Charlotte Peyton, a Fleet Coordinator Specialist (White), was sitting at Kennedy's computer and prohibiting Kennedy from accessing her computer so she could begin her work. After about two hours of interfering with Kennedy's ability to do her work, Zack Hankins, Senior Ag Operations Specialist (White), finally told Peyton to log off of Kennedy's computer. (Hankins was Kennedy's supervisor). When she logged off, Peyton told Kennedy (African-American) that, if it had been up to her, Kennedy never would have been hired as a Fleet Coordinator in the Ag Department, and that, after Kennedy is gone, "y'all will never sit at that desk." Kennedy interpreted "y'all" to mean Black persons. Kennedy promptly reported the incident to Zack Hankins, who simply shook his head. However, Hankins eventually called Peyton into his office, and after a few minutes, Peyton stormed out, threw all of her work on Kennedy's desk and left the site. Hankins retrieved the work from Kennedy and said that he would figure it all out.

- On October 15, 2018, Jason Norris, Senior Ag Specialist (White) told Kennedy that no one in that office wanted her there. When Kennedy asked Norris what he meant by that "biased" comment, Norris realized what he had said, and apologized.

- In 2018, during active shooter training, Jason Norris kicked open the back door to the office and pretended to be an active shooter. The sudden intrusion scared Kennedy so much that she felt like she was going to have a heart attack. Norris just laughed and told Kennedy that, if she reported it, he would just deny it.

- In December 2018, Charlotte Peyton called Kennedy an "a\*\*hole" and blocked her entrance to the bathroom. Lamb Weston investigated the incident, but the allegations were not substantiated. Kennedy was notified about the findings on January 4, 2019. According to Kennedy, the incident was swept under the rug.

- When Zack Hankins was out of the office, Peyton would pile extra work on Kennedy's desk out of spite.

- Peyton was permitted to go to lunch on company time, but Kennedy was not.

- On February 20, 2019, a conflict arose between Peyton and Kennedy, which Peyton reported to Team Lead, Zack Hankins. During an interaction with Peyton, Kennedy was witnessed continuously resisting instructions being given to her by Peyton. Kennedy also failed to reach out to Peyton to resolve any questions or uncertainties that she had. Lamb Weston provided Kennedy with corrective counseling to address this recurrent issue. Lamb Weston cautioned Kennedy that further infractions might result in progressive disciplinary action.

- On April 20, 2019, Peyton asked Kennedy about a task, to which Kennedy replied that she already had taken care of it. Peyton did not want to listen to that and placed a

cell phone in Kennedy's face to show where she had made a call regarding the matter. Peyton refused to remove the cell phone from in front of Kennedy's face.

- On April 2, 2020, Peyton asked Kennedy to do a task, but Kennedy asked her to give her a minute because she was really busy and on the telephone. However, Peyton immediately started yelling and demanding Kennedy to do it now. Zack Hankins witnessed the incident but issued a Disciplinary Action Form to Kennedy for insubordination and for failure to accord mutual respect. Specifically, Hankins overheard Kennedy tell Peyton that she would do it when she got a minute and that Peyton was not her boss. However, Hankins previously had told Kennedy and another coordinator that they should take direction from the Fleet Coordinator Specialist, i.e., Peyton, as if the instructions were coming from him. Hankins previously had warned Kennedy and the other coordinator that violation of the foregoing directive would result in disciplinary action. Kennedy refused to sign for the form.

- According to Kennedy, on, or about May 9, 2020, Peyton received a two-week work schedule that included 88 hours, whereas Kennedy only had 64 hours. Peyton was permitted to make every work-related decision, including shifting her workload to Kennedy.

- On July 16, 2020, Lamb Weston issued Kennedy a corrective instruction for poor work performance or careless performance of assigned duties. The previous day, at 4:45 p.m., Jason Norris noticed that Kennedy had sent out a production assessment at 4:20 p.m., which showed that the plant was running at 21 tons per hour. Around that same time, however, there was chatter on the radio about the "plant water being down." Jason Norris made a call and learned that the plant water had been down since 3:30 p.m. Jason Norris contacted Kennedy to inquire about the accuracy of her assessment, whereupon she admitted that she must have called to check on the production number prior to 3:30 p.m. Norris explained to Kennedy that the production assessment needed to be in real-time when she sent it out, and that it should be the last thing that she did before hitting "send." Norris cautioned Kennedy that the information needed to be sent out or there would be consequences. Kennedy replied, "[d]on't threaten me." Norris noted that Kennedy had been issued several verbal coachings regarding her work performance. Kennedy refused to sign the Disciplinary Action Form. Instead, Kennedy stated that she asked Zack Hankins to have the Team Leaders call the fleet coordinators, i.e., her, when they made changes to the tonnage. Hankins, however, never did so.

- On September 21, 2020, within two months of her prior tonnage falsification, Kennedy again was found to have falsified the real-time tonnage number by making up the number instead of calling the Team Lead to obtain the actual number. Accordingly, Kennedy was sent home, pending an investigation. When human

resources contacted Kennedy at home, she replied that, if Lamb Weston intended to fire her, then she would just go ahead and retire. According to Kennedy, on September 21, 2020, a Team Lead had told her that the plant would be running anywhere from 22 to 23 tons per hour for that day until "cut change," which was why she used 22 tons on her 3:00 p.m. assessment. (As it turns out, the actual tonnage was 23). Kennedy emphasizes that she was not advised that she would be terminated if the assessment was a mere one-ton off. Kennedy contends that, considering her good work record and employee evaluations, she should have received a three-day suspension, instead. Kennedy believes that others in the Ag Department did far worse but received no more than a slap on the wrist. She believes that her threatened discharge for the alleged tonnage fabrication was a pretext for racial discrimination in order to achieve an all-white office crew in the Ag Department. Kennedy would not have retired, but for Lamb Weston's threatened termination.

- To support her claim, Kennedy asserted that Kenneth Tucker, her fellow Fleet Coordinator (White), had been off on his tonnage report, but was not terminated. Kennedy was told in May or June 2020 that Tucker had been written up once. Kennedy was aware of another instance where she and Tucker were both off and had received a verbal warning.

- Kennedy reported that Latrice Dismuke (Black) was another Fleet Coordinator who had left the company five years earlier.

- Finally, Kennedy stated that Jerry Harris (Black), her former supervisor, was forced to quit his job and filed a discrimination suit through the EEOC. Kennedy was a witness and named in the lawsuit.

b) Timeliness of Certain Claims

Lamb Weston contends initially that Kennedy's claims pertaining to acts that occurred earlier than January 16, 2020, i.e., more than 300 days before Kennedy filed her EEOC charge, are time-barred.

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc*. 296 F.3d 376, 378 -379 (5th Cir. 2002); *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir. 1996). A Title VII plaintiff exhausts administrative remedies when she files a timely charge with the EEOC and receives a

statutory notice of right to sue. *Id*. In a "deferral state" such as Louisiana,[3] the Title VII plaintiff must file a charge of discrimination with the EEOC within 30 days after receiving notice that the state or local agency has terminated proceedings or within 300 days of the alleged discriminatory employment action, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1); *Burrell v. Brown,* 2000 WL 1056312, *3 (5th Cir. 2000) (unpubl.); *Janmeja v. Board of Supervisors of Louisiana State University,* 96 Fed. App'x. 212, 214 (5th Cir. 2004).

A Title VII discrimination claim that is not brought within 300 days of the alleged discriminatory act is time-barred. *Mack v. John L. Wortham & Son, L.P.*, 541 Fed. App'x. 348, 355 (5th Cir. 2013) (citations omitted). Two exceptions to this rule include the continuing violations doctrine and the hostile work environment theory. *Id*. Here, at minimum, Kennedy plainly endeavored to set forth a hostile work environment claim based on actions that spanned a number of years. *See* discussion, *infra*. Accordingly, Lamb Weston has not established that the claims are time-barred.

The court also declines to credit Lamb Weston's cursory argument that Kennedy failed to exhaust administrative remedies as to certain actions and claims. While Kennedy's EEOC charge is not a model of consistency, the facts and claims certainly were before the EEOC.

---

[3] "A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.,* 854 F.2d 762, 765 n.1 (5th Cir.1988). "The Louisiana Commission on Human Rights has been funded and operating since April 1994, making Louisiana a deferral state since that time." *Singleton v. RPM Pizza, Inc.,* 2004 WL 2216530, *3, n.1 (E.D. La. 2004) (citing, *inter alia*, La. R.S. § 51:2233).

c) <u>Hostile Work Environment/Harassment</u>

A hostile work environment is present when the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993)). To amount to a change in the terms and conditions of employment, the conduct at issue must be "extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788; 118 S.Ct. 2275, 2284 (1998).

To establish a hostile work environment claim under Title VII, plaintiff must demonstrate that she

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations omitted).

In assessing whether harassing conduct is sufficiently severe or pervasive to affect a term, condition, or privilege of employment depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance or workplace competence." *Peterson v. Linear Controls, Inc.*, 757 Fed. App'x. 370, 374 (5th Cir. 2019) (citations and internal quotation marks omitted); *Hernandez, supra*; *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020). In other words, a subjective belief of racial motivation, without more, is insufficient to show a hostile

15

work environment.  *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. App'x. 104, 107 (5th Cir. 2009).  A one-time use of a racial epithet does not establish a hostile work environment.  *See Peterson, supra* (citation omitted).  Even an occasional racially insensitive joke is insufficient. *West, supra.*

Moreover, "[i]solated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature."  *Higgins v. Lufkin Indus., Inc.*, 633 Fed. App'x. 229, 235 (5th Cir. 2015) (citations omitted).  Thus, "[d]iscourtesy or rudeness, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment."  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) (citations and internal quotation marks omitted).  In short, Title VII is not a general civility code for the American workplace.  *West*, 960 F.3d at 743.

Applying the foregoing considerations here, the court finds that the workplace conduct Kennedy experienced was not frequently physically threatening or excessively humiliating.  Rather, the conduct highlighted by Kennedy appears to have been hurtful and intended to make her feel unwanted.  Kennedy stated that she felt like Peyton was treating her like a child with how she spoke to her and treated her.  Furthermore, Peyton attempted to influence Kennedy's working conditions by assigning her additional work and interfering with her ability to do the work.

Nonetheless, Kennedy managed to persevere despite Peyton's inference.  To be sure, the court recognizes how Kennedy might find it difficult to concentrate at work under the foregoing conditions.  However, the conduct apparently did not "unreasonably interfere" with her work performance or competence because, according to Kennedy, her performance reviews remained

16

satisfactory or better.

In *Montgomery-Smith v. George*, the plaintiff complained of repeated denials of promotion, combined with the following incidents:

> (1) [a coworker] laughed and glared at [plaintiff] each time she was denied a promotion; (2) [plaintiff's] office was moved from the sixth floor to the fourth; (3) [plaintiff] was not invited to the 2017 Thanksgiving luncheon; (4) [plaintiff] was not asked to participate in the office's "Pink Day;" (5) [plaintiff] was isolated from her coworkers; and (6) other employees were instructed not to talk to [plaintiff].

*Montgomery-Smith v. George*, 810 Fed. App'x. 252, 259 (5th Cir. 2020). The Fifth Circuit, however, concluded that these incidents did not amount to the type of "extreme" conduct the Supreme Court requires to set forth a hostile work environment claim. *Id*.

In the absence of any opposition by Kennedy to Lamb Weston's motion to dismiss her hostile work environment claim, the court is compelled to find that she has failed to state a plausible claim for hostile work environment/harassment. While the court recognizes that Kennedy is acting pro se in this matter and has deferred consideration of the pending motion for a considerable period to allow her time to procure counsel, or to seek leave of court to file an out-of-time brief, that does not excuse her failure to respond to the arguments raised in the motion.

d) Discrimination

A plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (5th Cir. 1995). "[S]tatements or documents which show on its face that an improper criterion served as a basis-

not necessarily the sole basis, but a basis-for the adverse employment action are direct evidence of discrimination." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). However, when a case is prosecuted on the basis of circumstantial evidence, the courts employ the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).

To establish a prima facie case of race-based discrimination, a plaintiff must show that she "(1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Melvin v. Barr Roofing Co.*, 806 Fed. App'x. 301, 305 (5th Cir. 2020) (quoting *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)); *McCoy*, 492 F.3d at 556.

Kennedy is African-American, and. thus, belongs to a protected class. She further alleged that she executed her job duties satisfactorily and that her performance evaluations reflected same. The fact that Lamb Weston hired Kennedy suffices to show, at the pleading stage, that she was qualified for the position. *See Berquist v. Washington Mut. Bank*, 500 F.3d 344, 350 (5th Cir. 2007) (where plaintiff possesses the same job qualification at the time that she suffered the adverse employment action as when her employer placed her in that position, then she need not otherwise show that she was qualified).

For Title VII discrimination claims, adverse employment actions contemplate "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensation. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (citations omitted); *Peterson v. Linear Controls, Inc.*, 757 Fed. App'x. 370, 373 (5th Cir. 2019) (citation

omitted).  Thus, "an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action."  *Thompson, supra* (cleaned up).[4]

Here, with the notable exception of her threatened discharge, *see* discussion, *infra*, the facts adduced by Kennedy do not suggest that she suffered a cognizable adverse employment action.  Although Kennedy stated that she did not receive as much overtime as Charlotte Peyton, Peyton was not a valid comparator because she had a different job title than Kennedy.

Clearly, Kennedy's threatened discharge from employment constitutes an adverse employment action.  However, Kennedy did not allege that she was replaced by someone outside of her protected class.  The documents that Kennedy attached to her Complaint also indicate that Lamb Weston intended to discharge her for a legitimate, non-discriminatory reason, i.e., because she again failed to confirm the operating tonnage immediately prior to issuing her production assessment.  Kennedy states that she was not aware that being one-ton off represented a serious, let alone terminable infraction.  However, a little over two months earlier, Lamb Weston issued Kennedy a written disciplinary action form, which stressed that obtaining the production assessment needed to be the last thing she did before she hit send.  Kennedy does not dispute that she failed to comply with this procedure on September 21, 2020.

In her attached EEOC documents, Kennedy identified fellow Fleet Coordinator, Kenneth Tucker, as a potential comparator who purportedly also failed to obtain real-time production assessment before transmitting his report(s) but was not terminated.  However, the EEOC record

---

[4] Last year, however, the Fifth Circuit granted a petition for rehearing *en banc*, ostensibly to revisit its precedent regarding adverse employment actions.  *See Hamilton v. Dallas Cnty.*, 50 F.4th 1216 (5th Cir. 2022).

19

attached to Kennedy's Complaint reveals that Tucker had only been disciplined once for falsifying documents. He remains subject to termination should he violate the requirement a second time.

The court does not overlook Kennedy's allegations regarding the comments made by Peyton and Norris in 2017 and 2018. Norris's comment, however, was racially neutral. Depending on the context, Peyton's comment might or might not be based on race. Even so, the comment was made three years before Kennedy was terminated, and there are no facts alleged to show that Peyton had a direct or motivating role in Kennedy's threatened discharge.

In sum, influenced in no small part by the lack of opposition, the court finds that Kennedy has failed to allege a plausible claim for race-based discrimination.

e)    Retaliation

A prima facie case of retaliation under Title VII is comprised of three elements: "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (citation omitted).

An employee has engaged in a protected activity when she "either (1) opposed any practice made an unlawful employment practice by Title VII or (2) if she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* (citation and internal quotation marks omitted). For purposes of the second element of the prima facie case, the challenged action must be "materially adverse," i.e., that it is "harmful to the point that [it] could well dissuade a reasonable worker from making or

supporting a charge of discrimination." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (citation and internal quotation marks omitted).

Kennedy alleged that she engaged in protected activity when she complained about ongoing bias/harassment for the last 8.5-9 years in the Ag Service Department and that she ultimately was discharged, as a result. She also indicated that she had been a witness in a discrimination lawsuit brought by her former supervisor, Jerry Harris. The foregoing activities arguably qualify as protected activity, together with an adverse employment action. *See Foster v. Ferrellgas, Inc.*, 834 Fed. App'x. 88, 90–92 (5th Cir. 2020) (Title VII protects informal complaints so long as the plaintiff "reasonably believed" the challenged employment practice violated Title VII). That leaves only the causal link requirement.

A plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'" *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454–55 (5th Cir. 2013) (quoting *McCoy,* 492 F.3d at 562). Generally, however, such temporal proximity must be "very close." *Feist, supra* (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508 (2001)). While the Fifth Circuit has recognized previously that "a time lapse of up to four months" may be sufficiently close, *see Feist, supra*, a more recent panel concluded that "two and one-half months between the protected activity and the adverse employment decision, standing alone, is *not* within the 'very close' proximity that is necessary to establish causation." *Besser v. Texas Gen. Land Office*, 834 Fed. App'x. 876, 885 (5th Cir. 2020) (citations omitted) (emphasis added).

Here, there are no facts to suggest that Kennedy complained about bias or harassment within two and one-half months of her *de facto* discharge. Furthermore, Kennedy's former supervisor, Harris, necessarily left Lamb Weston no later than 2017 because, by that time, Hankins was her supervisor. Therefore, there is no temporal proximity between her protected activity and her adverse job action, as generally employed to support a causal link.

In sum, Kennedy fails to state a claim for retaliation under Title VII.

### <u>Conclusion</u>

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations set forth in Kennedy's complaint, including the attachments. *See Iqbal, supra*. The remaining allegations do not suffice to confer plausibility upon her claims.

Accordingly,

IT IS RECOMMENDED that the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 21] filed by Defendant Lamb Weston be GRANTED, and that Plaintiff Barbara Kennedy's claims be DISMISSED, with prejudice, in their entirety. Fed. R. Civ. P. 12(b)(6).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he or she makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this **25th day of May, 2023**.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

23